**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**                                                          **Criminal No: 5:09-CR-44**

**CHRISTOPHER LAMB a.k.a.**
**"fire22driver"**

**Defendant.**

**REPORT AND RECOMMENDATION THAT MOTION TO SUPPRESS  - VIOLATION
OF RIGHT TO COUNSEL BE DENIED, MOTION TO SUPPRESS - RESIDENTIAL
SEARCH WITHOUT A SEARCH WARRANT BE DENIED, MOTION TO SUPPRESS -
GARRITY VIOLATION BE DENIED, AND MOTION TO SUPPRESS - SEARCH OF
RESIDENCE WITH A WARRANT BE DENIED AND DECLINING TO RULE ON
MOTION TO SUPPRESS RULE 404(b) MATTERS**

**I.  INTRODUCTION**

On December 23, 2009, came the above named Plaintiff, by David J. Perri, Assistant

United States Attorney, and the above named Defendant, by Stephen D. Herndon for an

evidentiary hearing and argument on Defendant's Motion to Continue - Scheduling Conflict,

Motion to Compel Discovery, and Second Motion to Compel Discovery and Motion to Suppress

- Violation of Right to Counsel, Motion to Suppress - Residential Search Without a Warrant,

Motion to Suppress - Garrity Violation, Motion to Suppress - Search of Residence with a

Warrant, Motion to Suppress Rule 404(b) Matters.[1]   The hearing was continued and further

evidence was adduced on January 5, 2010, on the Motions to Suppress.[2]

_____

[1] Dkt. No. 36.

[2] Dkt. No. 41.

**A.      Background**

Defendant is the only defendant in a one-count indictment plus forfeiture allegation charging possession of child pornography.

**B.      The Motions**

      1.      Motion to Suppress - Violation of Right to Counsel[3]

      2.      Motion to Suppress - Residential Search Without a Warrant[4]

      3.      Motion to Suppress - Garrity Violation[5]

      4.      Motion to Suppress - Search of Residence with a Warrant[6]

      5.      Motion to Suppress Rule 404(b) Matters[7]

**C.      Recommendations**

I recommend that:

      1.      Motion to Suppress - Violation of Right to Counsel be **DENIED** in part and granted in part as hereinafter set forth.

      2.      Motion to Suppress - Residential Search Without a warrant be **DENIED.**

      3.      Motion to Suppress - Garrity Violation be **DENIED**.

      4.      Motion to Suppress - Search of Residence with a Warrant be **DENIED**.

I decline to rule on:

---

[3] Dkt. No. 16.

[4] Dkt. No. 17.

[5] Dkt. No. 22.

[6] Dkt. No. 27.

[7] Dkt. No. 35.

5.      Motion to Suppress Rule 404(b) Matters - Ruling Declined.

## II.  FACTS

Prior to November 5, 2008, as part of an ongoing international child pornographic crime investigation, the Department of Homeland Security obtained information from Italian authorities, which included a report that Italian officers seized and secured a child pornography website and the records from the website.  Included in the records were approximately 50,000 email addresses, spanning 28 countries.  The email addresses originating in the United States were then distributed by the Department of Homeland Security to local United States Postal inspectors, FBI agents, and Immigration and Customs Enforcement (ICE) agents.  Among the emails distributed to the local Pittsburgh divisions was "Fire22driver@hotmail.com."  After tracing the email address's IP address, the local agents were led to Captain Raymond McKenzie ("McKenzie").

On November 5, 2008, Special Agent Kenneth Rochford of ICE ("Agent Rochford") and Inspector Joseph Bellissimo of the USPS ("Inspector Bellissimo") (together "the agents") traveled to Wheeling, West Virginia, and went to the residence of McKenzie to engage in a "knock and talk" - to gather information from the potential suspect.  McKenzie was not home. The agents were advised by his sons that McKenzie was at work at the Wheeling Island fire station of the City of Wheeling Fire Department.  The agents went to the fire department and asked to speak to McKenzie.  McKenzie had no reason to expect the agents' visit and agreed to meet with them.  The agents inquired about the email address.  McKenzie responded that it was not his account but that he knew whose account it was.  McKenzie testified that he recognized the address because "22" is Defendant's fireman number and Defendant's occupation title is

"driver" because he drives the fire truck.  McKenzie testified that it was common to include the fireman number and occupation title in email addresses; McKenzie included his title and number in his email.  McKenzie then offered to get Defendant for the agents.  McKenzie found Defendant in the upstairs living quarters of the fire station and informed him that there were federal agents downstairs inquiring about a possible connection to child pornography and that they wished to speak to him.  McKenzie testified that he did not order or direct Defendant to speak with the agents, nor did he threaten economic sanctions if Defendant did not speak with the agents.  Defendant testified to viewing it as an order because when asked to do anything by a commanding officer, words such as "order," "direct," and "command" are never used. Defendant followed McKenzie downstairs to the truck bay, and McKenzie introduced Defendant to the agents.  Agent Rochford followed McKenzie into another room to further inquire why his name was attached to the email address.  McKenzie testified that he believed his name was attached to the email address because the fire station used the dial-up internet connection from McKenzie's home.  While Agent Rochford spoke with McKenzie, Inspector Bellissimo stayed with Defendant.  Inspector Bellissimo again identified himself to Defendant and informed Defendant as to why he and Agent Rochford were there.  Inspector Bellissimo obtained personal information from Defendant and then asked if the email address fire22driver@hotmail.com belonged to him.  Defendant responded that it did and that he had a computer at home that contained "some stuff on there that could be bad."  Defendant also asked if he needed the presence of an attorney, to which Inspector Bellissimo replied he could not answer the question. Inspector Bellissimo then asked if Defendant would allow the agents to look at the computer. Defendant asked whether that must be handled immediately.  Inspector Bellissimo replied that if

the computer was not viewed then, it would need to be placed on lockdown. Defendant consented but volunteered to lead the agents to his home rather than allow them to go on their own. When Agent Rochford returned, Inspector Bellissimo advised him of the conversation with Defendant and informed Agent Rochford that Defendant had consented to a search. About 25 to 30 minutes later, after McKenzie found another fireman to cover Defendant's shift, Agent Rochford, Inspector Bellissimo, and Defendant left the fire station for Defendant's home.

Defendant drove his vehicle and was followed by the agents in a separate vehicle. Defendant exited Interstate 70 at Dallas Pike (the exit for Defendant's home) and pulled into a gas station because he was low on fuel. When Defendant exited his vehicle, Inspector Bellissimo approached Defendant to ensure that he was not attempting to "hurt himself." Defendant informed Inspector Bellissimo that he had been in contact with his attorney, was withdrawing his consent to search his home, and was not going to say anything further without his attorney present. Inspector Bellissimo responded that it was well within Defendant's rights to do so; however, based on the information Defendant had previously given to the agents, they needed to continue to the house to at least secure the computer. The agents further advised Defendant that when they arrived at the house, one agent would stay at the house while the other agent would go get a search warrant. The agents did not ask Defendant to continue leading them to his residence. During the hearing, there was a dispute as to whether the agents could have found the home without the direction of Defendant. Agent Rochford testified that he did not know Defendant's address and that he could not remember if he had a GPS in his car. Inspector Bellissimo testified to obtaining Defendant's home address during his conversation with Defendant at the fire station. Inspector Bellissimo testified further that he remembered having a

GPS in Agent Rochford's car. There was a dispute as to whether a GPS would have directed the agents to Defendant's residence. Regardless, Inspector Bellissimo works for the United States Postal Service and testified to being able to obtain directions to Defendant's residence. Despite not having any obligation to do so, Defendant volunteered to continue to his home. He returned to his vehicle and drove home; the agents followed.

Upon arriving at Defendant's residence, the agents observed a woman and two children, later identified as Defendant's wife and children, playing outside. Defendant phoned his wife during his trip from the fire station to his residence to inform her of the situation so that she would not be surprised by the agents' visit. Without making any further statements or asking any further questions, the agents informed Defendant and his family that they would have to secure the house to preserve evidence because Defendant told them there was a computer in the house with child pornography, which Defendant had downloaded. The agents further advised Defendant that no one could enter the house until they returned with a search warrant. Out of concern for his family, Defendant asked if his wife and children could enter the house. The agents replied no because evidence could be destroyed. Defendant became upset and said he did not know what to do. Defendant said his lawyer would be angry but asked if he got the computer and put it in the garage, could his wife and children enter the house. The agents agreed to Defendant's idea. Agent Rochford and Inspector Bellissimo both testified that this was Defendant's idea, and it was a reasonable accommodation by the agents. Defendant testified that this was the agents' idea.

The agents then followed Defendant into the home. The agents did observe their surroundings but did not touch or inspect any of Defendant's belongings. After a continuous

procession to the upstairs of the home, the computer was unplugged the computer and carried to the garage. Defendant testified that Inspector Bellissimo disconnected the tower and carried it to the garage. Inspector Bellissimo and Agent Rochford testified that Defendant disconnected and carried the tower. The agents were satisfied with Defendant's placement of the tower in the garage because they could observe it from their post outside the home. Defendant's wife and children were then allowed to enter the house.

Shortly thereafter, a local sheriff who had been called, arrived at the residence. The deputy remained at the residence with Defendant and Inspector Bellissimo; while, Agent Rochford traveled to the federal courthouse to obtain a search warrant from the magistrate judge. Agent Rochford returned to the residence with an executed search warrant, and a full search of the home was then performed.

### III. MOTION TO SUPPRESS - VIOLATION OF RIGHT TO COUNSEL

**A.      Contentions of the Parties**

Defendant argues that communications between Defendant and law enforcement agents were conducted in violation of Defendant's Sixth Amendment Right to Counsel. Defendant requests that the Court suppress any communications between Defendant and law enforcement agents, and any and all evidence resulting from those communications, taking place after Defendant advised them that he was represented by counsel and that counsel had advised him to refrain from consenting to the search of his residence and seizure of his computer.[8]

The Government contends that communications between Defendant and law enforcement agents were not in violation of Defendant's Sixth Amendment Right to Counsel because the

_____

[8] Dkt. No. 16.

agents did not interview or otherwise question Defendant at any time between their departure from the fire station and the arrival of the search warrant[9].

**B.       Discussion**

The Fifth Amendment of the Constitution guarantees "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." Schmerber v. California, 384 U.S. 757, 760-61 (1966) (quoting Malloy v. Hogan, 378 U.S. 1, 8 (1964)).  The privilege reaches communications and the compulsion of responses.  Id. at 763-64.  The Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings.  Montejo v. Louisiana, 129 S.Ct. 2079, 2085 (2009) (citing United States v. Wade, 388 U.S. 218, 227-228 (1967)). "Interrogation by the State is such a stage." Id. (citing Massiah v. United States, 377 U.S. 201, 204-05 (1964)).

The testimony has shown that once the Defendant invoked his Fifth Amendment right to counsel at the gas station, the agents discontinued their questioning until after the search warrant was executed.  Once the warrant was executed and the agents began their search of the house, Defendant was asked by one of the agents "if he (the Defendant) got pleasure from the images," and "if they (the agents) would find images of his (Defendant's) children."  Aside from those two questions, the agents respected Defendant's invocation of his rights.

It appears that Defendant is arguing his leading the agents to his house was a statement in violation of his Fifth Amendment rights.  Defendant relies on U.S. v. Anderson 21 M.J. 751 (1985) to illustrate his case.  However, Anderson has no applicability to the case at bar.  In

---

[9] Dkt. No. 29.

Anderson, the U.S. Navy-Marine corps Court of Military Review initially found that the non-verbal statement made by the defendant pointing to the gun used by the defendant to kill the victim on naval territory was improperly admitted into evidence. U.S. v. Anderson, 21 M.J. 751, 758 (1985). Though later admitted because of the inevitable discovery doctrine, the Court focused on the circumstances surrounding defendant's non-verbal statement of pointing to the gun. Id. The defendant pointed to the gun after an officer from the base police force asked for it. The Court suppressed the non-verbal statement because the officer "asked the question with an investigatory intent and the question was reasonably calculated to evoke an incriminating response." Id.

Unlike the facts in Anderson, the agents did not ask Defendant to lead them to his house. Rather, upon invoking his Fifth Amendment rights at the gas station, the agents informed Defendant that they would need to continue to his home to secure the computer based on the information Defendant provided to them at the fire station. Defendant voluntarily chose to lead the agents to his home; Defendant was not asked or forced by the agents to do so. During the hearing, much was made over the difficulty in finding Defendant's residence. However, the home could have been found without Defendant's direction. Defendant was free to return to work; he chose to continue to lead the agents to his home.

**C.     Recommendation**

Upon invoking his right to counsel, the agents discontinued questioning of Defendant until the search warrant arrived. Once the search warrant arrived, the agents posed two questions to Defendant. The drive from the gas station to Defendant's home was not a statement in response to a question. Therefore, I recommend that only the two responses made by Defendant

after the search warrant was executed **BE SUPPRESSED**; otherwise, the motion be **DENIED.**

## IV.  MOTION TO SUPPRESS - RESIDENTIAL SEARCH WITHOUT A WARRANT

### A.  Contentions of the Parties

Defendant requests that this Court suppress any evidence seized in a search of his residence conducted without a search warrant.  Defendant argues that upon arriving at his house, the agents informed Defendant they needed to secure the computer and entered Defendant's residence to do so.  Defendant argues that this entry into Defendant's house and removal of the computer constitutes a search without a warrant.[10]

The Government contends that there was no search without a warrant.  Specifically, the Government contends that after Defendant revoked his consent to search, the agents informed Defendant that they planned to seek a warrant and needed to secure the residence in the meantime.  Defendant's family was outside of the residence when Defendant and the agents arrived, and at the request of Defendant, the agents agreed to allow Defendant place the computer in the garage in exchange for the ability of his family to enter the house.  Though the agents followed Defendant into the house for him to disconnect the computer, the Government contends that no search was conducted by the agents at this time and no search was conducted until the warrant was secured.[11]

### B.  Discussion

"Different interests are implicated by a seizure than by a search."  Segura v. United States, 468 U.S. 796, 806 (1984).  A search affects only a person's privacy interests; while, a

_____

[10] Dkt. No. 17.

[11] Dkt. No. 30.

seizure affects only a person's possessory interests. Id. The Fourth Amendment protects against both unreasonable searches and seizures and requires probable cause for a warrant before any legal search or seizure may take place. Chambers v. Maroney, 399 U.S. 42, 51 (1970). In addition to recognized exceptions to the search warrant requirement, the Supreme Court "has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, where a warrantless search was either held to be or likely would have been held impermissible." Segura, 468 U.S., at 806.[12]

Such was the situation in Segura. After obtaining information regarding drug trafficking, the New York Drug Enforcement Task Force (NYDETF agents) maintained surveillance over petitioners Andres Segura and Luz Marina Colon. The agents surveyed a meeting, which subsequently led to viewing a drug sale between petitioners and two other individuals. The two individuals were arrested by the NYDETF agents, admitted to purchasing cocaine from Segura and Colon, and informed the agents that Segura was to call them later that evening to inquire if more cocaine was needed. The NYDETF agents received authorization from an Assistant United States Attorney to arrest Segura and Colon and were also advised that because of the late hour, a search warrant for Segura's apartment could not be obtained until the following day. In the meantime, the NYDETF agents were advised to secure the premises to prevent the destruction of the evidence. Shortly thereafter, Segura was arrested and led to his apartment by the agents. The agents entered the apartment without permission and conducted a limited security check of the apartment. The agents then waited 19 hours inside the apartment for the search warrant to be

---

[12] In some instances, the Supreme Court has also allowed temporary seizures on less than probable cause. Segura, 468 U.S., at 806, FN 6.

executed before searching the apartment.

The petitioners argued that all of the contents of the apartment were "seized" when the agents entered the apartment because the contents were under the control of the agents and no one had the ability to remove or destroy the incriminating evidence. Id. at 805. After engaging in an examination of prior cases involving the seizure of an automobile,[13] a footlocker,[14] and a suitcase,[15] all of which found the warrantless seizure lawful, the Court found no reason not to extend the protection to a dwelling. Id. at 809. The Court found that underlying all of the decisions was the basic societal interest in the discovery and protection of incriminating evidence from removal or destruction, which sometimes outweighed an individual's possessory interest, provided there is probable cause to believe the property seized is associated with criminal activity. Id. at 808. Ultimately, the Court held "that securing a dwelling, on the basis of probable cause, to prevent the destruction of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." Id. at 810.

The facts of the case at bar perfectly fit the Segura holding. Defendant told the agents at the fire station that he had a computer at his residence that stored questionable content (i.e., child pornography). Therefore, the agents had probable cause to secure a warrant. However, at the time, the agents did not need to apply for a warrant because Defendant consented to a search of his residence. (See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). Though the Defendant was well within his rights to revoke his consent, U.S. v. Lattimore, 87 F.3d 647, 651

---

[13] Chambers v. Maroney, 399 U.S. 42 (1970).

[14] United States v. Chadwick, 433 U.S. 1 (1977).

[15] Arkansas v. Sanders, 442 U.S. 753 (1979).

(1996), the agents still had probable cause to obtain a search warrant based on the statements Defendant made at the fire station, and under Segura, were permitted to secure the residence while the search warrant was secured. Therefore, that the agents prevented anyone from entering the residence was a lawful seizure under Segura.

Defendant, however, argues that the conduct constituted a search because after seizing the residence, the agents entered the residence, disconnected the computer, and placed it in the garage. Therefore, the agents' activity actually constituted a warrantless search, which falls under no exceptions.

This Court cannot agree with Defendant that the subsequent entry and removal of the computer was an unlawful entry and search. As in Segura, the Supreme Court found the temporary seizure of a home permissible while a search warrant was obtained. Illinois v. McArthur, 531 U.S. 326, 331 (2001). A police officer accompanying the defendant's wife to her home with the defendant was informed by Defendant's wife that she saw her husband (the defendant) hide drugs under their couch. The police officer knocked on the door, informed the defendant of his wife's statement, and asked for permission to search the home. The defendant refused to consent, so the police officer summoned another officer to secure a search warrant. The police officer then told the defendant, who was standing outside the house, that he could not reenter the home unless a police officer accompanied him. The defendant reentered the home on three separate occasions before the search warrant was secured, and on each occasion, the police officer stood inside the doorway to observe what the defendant did.

The Supreme Court found that based on the circumstances of the case, the warrantless seizure was not *per se* unreasonable because the case involved "a plausible claim of specially

pressing or urgent law enforcement need, *i.e.*, "'exigent circumstances.'" Id. at 331 (citing

United States v. Place, 462 U.S. 696, 701 (1983) (holding that "[T]he exigencies of the

circumstances may permit temporary seizure without warrant.")).  The Court conducted a

balancing test weighing the privacy-related and law enforcement-related concerns to determine if

the intrusion was reasonable and concluded that the restriction was reasonable in light of four

circumstances.  Id.  First, the police had probable cause to believe the residence contained

evidence of crime and contraband, specifically the drugs.  Id. at 331-32.  Second, the police had

good reason to fear that, without interference, the defendant would destroy the drugs before the

search warrant could be secured.  Id. at 332.  Third, and most relevant to the case at bar, "the

police made reasonable efforts to reconcile their law enforcement needs with the demands of

personal privacy.  Id.  The Court focused on the fact that the police officer neither searched the

residence nor arrested the defendant before obtaining a warrant; rather, they imposed the less-

restrictive restraint, which only prevented the defendant from entering the home.  Id.

Additionally, the Court noted that the police officer left the residence and the defendant's

belongings intact until the warrant was obtained.  Id.  Finally, the police imposed the limitation

for only a limited period of time.  Id

        Just as the seizure was found to be reasonable in light of the circumstances in McArthur,

the seizure and subsequent measures taken by police are reasonable in light of the circumstances

of the case.  First, the agents had probable cause to believe Defendant's residence contained

evidence of crime and contraband; specifically, Defendant admitted to the agents to having

questionable material (i.e., child pornography) on his home computer.  Second, though it seemed

unlikely because Defendant was cooperating with the agents, Defendant could have gone into the

residence and deleted some or all of the images from his computer or destroyed his computer. As for the fourth factor in McArthur, the agents imposed the limitation on the Defendant for the length of time it took to secure a search warrant. Moreover, the agents only imposed the limitation on Defendant's family for a short period of time, which was, under the third factor in McArthur, a reasonable accommodation for the family. Just as in McArthur, the agents made a reasonable effort to reconcile their law enforcement needs - to secure the computer - with the demands of personal privacy. Upon their arrival at Defendant's residence, the agents were primarily concerned with Defendant's home computer and the images stored on it. Because it was early November and the sun was going down, the agents allowed Defendant's family into the home in exchange for the computer being brought to the garage. Again acting reasonably, the agents followed Defendant into his home, so the computer could be disconnected and taken to the garage. The agents only followed Defendant into the home; they did not search the home at this time or any other time prior to the warrant being executed. Therefore, the agents accommodated the demands of personal privacy as demanded in McArthur. The agents also accommodated their law enforcement needs with the compromise. Allowing the family into the home could have potentially been disastrous. The Defendant testified that he called his wife during his drive from the fire station to the residence. Because his wife was informed of the situation with the agents, she could have deleted images from the other computers and hard drives stored in the residence upon entering the home before the search warrant was executed. Therefore, in light of the circumstances, not only was the seizure reasonable under both Segura and McArthur, but the exchange made was reasonable under the factors set forth in McArthur.

**C.      Recommendation**

Because the agents only lawfully seized Defendant's residence and no warrantless search was conducted, I recommend that Defendant's Motion to Suppress - Search Without a Warrant be **DENIED**.

## V.  MOTION TO SUPPRESS - GARRITY VIOLATION

### A.    Contentions of the Parties

Defendant requests that this Court suppress any statement made by Defendant to the agents and to Captain McKenzie on November 5, 2008, as well as any evidence derived from that statement.  Defendant argues that the statements were made in violation of <u>Garrity v. New Jersey</u> because he was summoned by Captain McKenzie into the presence of the agents for questioning and Defendant was not free to leave the questioning.  Additionally, Defendant argues that the interrogation was in violation of W.Va. Code § 8-14A-2(5) (2010) because Defendant was not advised to his right to counsel before interrogation and the interrogation was not recorded.[16]    The Government contends that Defendant's statements were not made in violation of <u>Garrity</u> because the statements made during the interview did not occur in the context of a disciplinary investigation.  Further, the Government contends that Defendant voluntarily made the statements during a "knock and talk."  Finally, the Government contends that W.Va. Code § 8-14A-2(5) (2010) is inapplicable because Defendant was not under investigation by his commanding officer as required by the statute.[17]

### B.    Discussion

In <u>Garrity v. New Jersey</u>, 385 U.S. 493 (1967), the United States Supreme Court held that

---

[16] Dkt. No. 22.

[17] Dkt. No. 31.

"the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office . . . ." Garrity, 385 U.S., at 500. At issue in Garrity, was the voluntariness of statements made by New Jersey police officers during a state Attorney General investigation involving irregularities in handling cases in the municipal courts. Id. at 494. The Attorney General was directed by the Supreme Court of New Jersey to question police officers in connection with the investigation. Id. Before questioning, each police officer was warned, based on N.J. Rev. Stat. § 2A:81-17.1 (Supp. 1965), that "if he refused to answer he would be subject to removal from office." Id. As the Court explained, "the choice given petitioners was either to forfeit their jobs or to incriminate themselves." Id. at 497.

Garrity is inapplicable to the case at bar. As the facts indicate, Defendant was questioned by the agents. Though Captain McKenzie summoned Defendant for questioning by the agents, Captain McKenzie never once ordered Defendant answer the agents' questions with the threat of removal from office. Captain McKenzie was not present during the interrogation; in fact, once Captain McKenzie summoned Defendant, Captain McKenzie's only other involvement was finding a fireman to cover Defendant's shift. Nor was Defendant told, prior to questioning by either the agents or Captain McKenzie, that his refusal to answer would result in removal from office. Because Defendant's statements were not obtained under the "threat of removal from office," Defendant's rights under Garrity were not violated.

Similarly, the agents' interrogation of Defendant did not violate W.Va. Code § 8-14A-2(5) (2010). The statute requires that certain conditions be followed when interrogating members of the police and fire departments. However, at the outset of the statute, it requires that

the "police officer or fireman . . . [be] subjected to interrogation by his commanding officer, or any other member of the employing police or fire department, which could lead to punitive action . . . ."  W.Va. Code § 8-14A-2 (2010).  Defendant was not interrogated by Captain McKenzie or any other commanding officer; therefore, the statute is inapplicable.

## C.      Recommendation

Because the agents' interrogation of Defendant did not violate Garrity v. New Jersey or the conditions under W.Va. Code § 8-14A-2(5), I recommend that the Motion to Suppress - Garrity Violation be **DENIED.**

## VI.  MOTION TO SUPPRESS - SEARCH OF RESIDENCE WITH A WARRANT

## A.      Contentions of the Parties

Defendant requests that this Court suppress one or more computers, computer hardware, computer software, and any subsequent search of the hard drives contained within any computer seized in the search of Defendant's residence with a search warrant.  Defendant argues that the search of his home with a warrant was an illegal search because the warrant was fruit of the poisonous tree obtained in violation of his Fourth, Fifth, and Sixth Amendment rights, and upon extraction of the unlawfully obtained information, probable cause would not exist to lawfully secure a search warrant.  First, Defendant argues that the location to be searched and description, nature, and very existence of the property located in the residence subject to seizure was provided to the agents during an interview at the fire station that violated both Garrity v. New Jersey and Montejo v. Louisiana.  Additionally, Defendant argues that the location to be searched was again provided to the law enforcement agents after Defendant asserted his Fifth

and Sixth Amendment rights to counsel.[18]

The Government contends that the search warrant was not obtained in violation of Defendant's Fifth and Sixth Amendment rights; therefore, the motion to suppress should be denied.[19]

**B.      Discussion**

Defendant's argument that the search warrant is the fruit of the poisonous tree is contingent upon the dispositions of the Motion to Suppress - Violation of Right to Counsel, Motion to Suppress - Residential Search Without a Warrant, and Motion to Suppress - Garrity Violation.  The Court found above that all motions should be denied.  The Court will forego another complete analysis of Defendant's argument that the search warrant was obtained in violation of his Fifth and Sixth Amendment rights to counsel, Fourth Amendment rights to unreasonable search and seizure, and Garrity.

The only argument Defendant makes not previously addressed by the Court is under Montejo v. Louisiana, 129 S.Ct. 2079 (2009).  Defendant argues, under Montejo, that the information contained in the affidavit was given to the agents in a continued interview after Defendant asserted his Fifth and Sixth Amendment rights to counsel, which violated Montejo. Montejo overrules Michigan v. Jackson, 475 U.S. 625 (1986), which held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid."  Montejo, 129 S.Ct., at 2083 (quoting, Jackson, 475 U.S., at 636).  Though the Court in

---

[18] Dkt. No. 27.

[19] Dkt. No. 33.

Montejo did not require an invocation of the right to counsel, the Court also said that the right to counsel was automatic. Id. at 2088. Either way, the issue in Montejo concerned custodial *interrogation* by police officers and the right to counsel. The ruling therefore is inapplicable to the case at bar because Defendant was not questioned after he invoked his right to counsel. Additionally, for reasons already set forth, Defendant's action of continuing to lead the agents to his home was not a statement in response to a question.

**C.     Recommendation**

Because Defendant's Motion to Suppress - Search of Residence with a Warrant is based on the previous three arguments and the Court recommended denial on all three motions, the Court recommends that this Motion also be **DENIED.**

## VII.  MOTION TO SUPPRESS RULE 404(b) MATTERS

**A.     Contentions of the Parties**

Defendant requests that this Court suppress any and all evidence of character including, but not limited to evidence of other crimes, acts, or wrongs under Rule 404(b) of the Federal Rules of Evidence. In the alternative, Defendant requests that this Court prohibit the Government from introducing any evidence of other crimes, acts, or wrongs under Rule 404(b) of the Federal Rules of Evidence or otherwise.

The Government made no response to this Motion.

**B.     Discussion**

The Court declines to rule on this motion because this is a question of evidence for the trial court.

**C.     Recommendation**

Ruling declined.

Filing of objections does not stay this Order.  Because trial is imminent, any party may, by January 21, 2010, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is  made, and the basis for such objection.  A copy of such objections should also be submitted to District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable.

**IT IS SO ORDERED.**

DATED: January 14, 2010

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE