IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                Criminal Action No. 5:09CR44
                                               (STAMP)

CHRISTOPHER LAMB
a/k/a "fire22driver,"

    Defendant.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE
AND OVERRULING DEFENDANT'S OBJECTIONS**

I.  Procedural History

The defendant, Christopher Lamb, was named in a single-count indictment and a forfeiture allegation charging him with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). The defendant filed several motions to suppress, including the following: motion to suppress - violation of right to counsel; motion to suppress - residential search without a warrant; motion to suppress - Garrity violation; motion to suppress - search of residence with a warrant; and motion to suppress Rule 404(b) matters. The government filed a response in opposition to the first four motions, as well as a supplemental response to the defendant's various motions.

On December 23, 2009, and continuing on January 5, 2010, United States Magistrate Judge James E. Seibert conducted an evidentiary hearing on this matter. Magistrate Judge Seibert thereafter entered a report and recommendation recommending that

the defendant's motion to suppress - violation of right to counsel be granted in part and denied in part; that the motion to suppress - residential search without a warrant be denied; that the motion to suppress - <u>Garrity</u> violation be denied; that the motion to suppress - search of residence with a warrant be denied; and that a ruling be declined on the motion to suppress Rule 404(b) matters. The magistrate judge informed the parties that if they objected to any portion of his proposed findings of fact and recommendation for disposition, they must file written objections after being served with a copy of his recommendation. The defendant filed objections, to which the government filed a response.

For the reasons set forth below, this Court affirms and adopts the magistrate judge's report and recommendation in its entirety and overrules the defendant's objections.

## II. <u>Facts</u>

This Court believes that a full recitation of the facts in this case is unnecessary here. Accordingly, this Court relies on the detailed recitation of facts provided in Section II of Magistrate Judge Seibert's report and recommendation. An abbreviated review of the relevant facts follows below.

Prior to November of 2008, Pittsburgh law enforcement divisions received information that the email "fire22driver@hotmail.com" was associated with a child pornography website. Local agents traced the email's IP address and were led to Captain Raymond McKenzie ("Captain McKenzie").

2

On November 5, 2008, Special Agent Kenneth Rochford ("Agent Rochford") of Immigration and Customs Enforcement and Inspector Joseph Bellissimo ("Inspector Bellissimo") of the United States Postal Service (collectively "the agents") went to the residence of Captain McKenzie. He was not at home, but the agents were advised by his sons that he was at work at the City of Wheeling Fire Department. The agents then traveled to the fire department station house and asked to speak to Captain McKenzie. When the agents inquired about the email address, Captain McKenzie responded that it was not his account, but that he recognized who the account actually belonged to.

Captain McKenzie found the defendant in the upstairs living quarters of the fire station and informed him that federal agents downstairs were inquiring about a possible connection to child pornography and wished to speak to him. At the evidentiary hearing, Captain McKenzie testified that he did not order or direct the defendant to speak to the agents, nor threaten economic sanctions if he refused to speak to the agents. Nevertheless, the defendant testified that he viewed Captain McKenzie's statements as an order made by a commanding officer. The defendant, therefore, retreated downstairs to talk to the agents.

Once downstairs, Agent Rochford followed Captain McKenzie into another room to inquire as to why his name was attached to the email address. Captain McKenzie believed that his name was so

attached because the fire station used a dial-up connection from his home.

In another room, Inspector Bellissimo identified himself to the defendant, informed the defendant as to why the agents were there, and obtained personal information from the defendant. Inspector Bellissimo also asked the defendant if the email address "fire22driver@hotmail.com" belonged to him, to which the defendant responded that it did, and that he had a computer at home which contained "some stuff on there that could be bad." The defendant then asked if he needed an attorney, and Inspector Bellissimo replied that he could not answer that question. Instead, Inspector Bellissimo asked the defendant if agents could look at the computer. When the defendant asked whether they must view it immediately, Inspector Bellissimo replied that if not viewed then, the computer would need to be placed on lockdown. The defendant then consented to the search, and volunteered to lead the agents to his home. Approximately twenty-five to thirty minutes later, the agents and the defendant left the fire station for the defendant's home.

Prior to arriving at the home, the defendant, driving his own vehicle, stopped at a gas station because he was low on fuel. At that time, the defendant informed Inspector Bellissimo that he had been in contact with his attorney, was withdrawing his consent to search the home, and was not going to say anything further without his attorney present. Inspector Bellissimo told the defendant that

4

the agents needed to continue to the house to at least secure the computer, and that when they arrived at the house, one agent would stay at the house while the other obtained a search warrant. The agents thereafter did not ask the defendant to continue leading them to his residence, but the defendant volunteered to do so nonetheless. At the evidentiary hearing, there remained a dispute as to whether the agents could have found the home without the defendant's direction.

Upon arriving at the defendant's residence, the agents observed the defendant's wife and children playing outside. The agents advised the defendant and his family that no one could enter the house until they obtained a search warrant. The defendant became upset when his wife and children could not enter the home. Despite commenting that his lawyer would be angry, he asked the agents if he could get the computer and put it in the garage so that his wife and children could enter the house. The agents agreed to this idea. At the evidentiary hearing, the agents both testified that this was the defendant's idea. The defendant conversely testified that this was the agents' idea.

The agents then followed the defendant into his home and upstairs where the computer was located. They did observe their surroundings but did not touch or inspect any of the defendant's belongings. Ultimately, the computer was unplugged and carried to the garage. The defendant testified that Inspector Bellissimo disconnected the tower and carried it to the garage, while the

5

agents both testified that the defendant disconnected and carried the tower. Once the computer was placed in the garage, the defendant's wife and children were allowed to enter the home.

Shortly thereafter, a local sheriff arrived at the residence. The sheriff and Inspector Bellissimo remained at the residence, while Agent Rochford obtained a search warrant. Agent Rochford then returned to the residence with an executed search warrant, and a full search of the residence was performed.

## III. Applicable Law

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a de novo review of any portion of the magistrate judge's recommendation to which objection is timely made. As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." See Webb v. Califano, 468 F. Supp. 825 (E.D. Cal. 1979). Here, the defendant filed timely objections to the magistrate judge's report and recommendation. Accordingly, this Court reviews these matters de novo.

## IV. Discussion

A. Motion to Suppress - Violation of Right to Counsel

The defendant contends in this motion to suppress that his rights under both the Fifth and Sixth Amendments of the United States Constitution were violated when the agents asked him questions during the search of the residence and by leading the agents to his house, both after the defendant invoked his right to

6

counsel. The government responds that the communications between the defendant and the agents were not in violation of the defendant's Sixth Amendment right to counsel because the agents did not interview or otherwise question the defendant at any time between their departure from the fire station and the execution of the search warrant. The government further contends in its response to the defendant's objections that the doctrine of inevitable discovery would have eventually led the agents to the defendant's residence.

The Fifth Amendment to the United States Constitution protects an individual's right against self-incrimination. U.S. Const. amend v. An individual has a Fifth Amendment right against compelled self-incrimination and is therefore entitled to have counsel present during custodial interrogations. Miranda v. Arizona, 384 U.S. 436 (1966). This privilege includes communications and the compulsion of responses. Schmerber v. California, 384 U.S. 757, 763-64 (1966). The Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings. Montejo v. Louisiana, 129 S. Ct. 2079, 2085 (2009) (citing United States v. Wade, 388 U.S. 218, 227-28 (1967)). "Interrogation by the State is such a stage." Id. (citing Massiah v. United States, 377 US. 201, 204-05 (1964)).

At the evidentiary hearing, it was determined that during the execution of the search warrant, after the defendant had already

invoked his Fifth Amendment right to counsel at the gas station, the defendant was asked by one of the agents "if he (the defendant) got pleasure from the images," and "if they (the agents) would find images of his (defendant's) children." The magistrate judge recommended that the responses that the defendant made to these questions should be suppressed as a violation of his Fifth Amendment right to counsel. This Court affirms and adopts this recommendation of the magistrate judge and grants the defendant's motion to suppress in part as to these statements.

Nevertheless, this Court denies the remainder of the defendant's motion to suppress. The magistrate judge held that the defendant's constitutional rights were not violated by leading the agents to his residence. After a thorough review of the record, this Court agrees.

The defendant cites United States v. Anderson, 21 M.J. 751 (1985), and Nix v. Williams, 467 U.S. 431 (1984), in support of his argument. In Anderson, the court initially recognized that the defendant's non-verbal statement of pointing to a gun was obtained in violation of his rights because the officer "asked the question with an investigatory intent and the question was reasonably calculated to evoke an incriminating response." Id. This evidence was thereafter admitted under the inevitable discovery doctrine. See Nix, 467 U.S. at 444 ("If the prosecution can establish by a preponderance of the evidence that the information ultimately or

inevitably would have been discovered by lawful means, . . . then the evidence should be received.").

Similarly, in <u>Nix</u>, the United States Supreme Court held that law enforcement officers violated the defendant's Sixth Amendment right to counsel when they asked his help in locating a body after the defendant had asserted his right to counsel. 467 U.S. at 437. Again, the evidence was ultimately admitted under the inevitable discovery doctrine. <u>Id.</u> at 450.

As determined by the magistrate judge in his report and recommendation, these cases are inapposite here. Unlike the law enforcement officers in <u>Anderson</u> and <u>Nix</u>, the agents in this case did not ask the defendant to lead them to his residence. Instead, the agents informed the defendant that they would need to continue to his home to secure the computer, at which time the defendant voluntarily led the agents to his home. The evidence produced at the evidentiary hearing demonstrated that the defendant was neither asked nor forced by the agents to do so.

Nonetheless, even assuming that <u>Anderson</u> and <u>Nix</u> did apply in this case, the evidence is admissible under the inevitable discovery doctrine. The defendant provided his address during his initial encounter with the agents at the fire station, and the agents could have properly used global positioning system technology to lead them to the residence, where the defendant already confided to them that illegal contraband existed.

9

Accordingly, the defendant's motion to suppress is denied as to his non-verbal statement of leading the agents to his residence.

B.  <u>Motion to Suppress - Residential Search Without a Warrant</u>

In this motion to suppress, the defendant requests that this Court suppress any evidence seized in a search of his residence conducted without a search warrant.  Specifically, the defendant argues that the agents' entry into his house and removal of the computer constituted a search without a warrant.  The Court finds the defendant's argument meritless.

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to few specifically established and well-delineated exceptions.'" <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 219 (1973) (quoting <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967)).  The United States Supreme Court has also held that securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents." <u>Segura v. United States</u>, 468 U.S. 796, 806 (1984).  A court must conduct a balancing test weighing the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable, looking particularly at four factors: (1) whether the police had probable cause to believe the residence contained evidence of crime and contraband; (2) whether the police had good

reason to fear that, without interference, the defendant would destroy the evidence before a search warrant could be secured; (3) whether the police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy; and (4) whether the police imposed the limitation for only a limited period of time. Illinois v. McArthur, 531 U.S. 326, 331 (2001).

Here, the seizure and subsequent measures taken by the police were reasonable. Indeed, the agents had probable cause to believe that the defendant's residence contained evidence of child pornography as the defendant had specifically admitted to this. At any time, the defendant could have entered the residence and deleted this evidence from his computer. Furthermore, the agents made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy, and only imposed a limitation on the defendant's family for a short period of time. Acting reasonably, the agents allowed the defendant's family into the home as long as the computer was placed in the garage. To accomplish this, the agents followed the defendant into the home, and without conducting a search, allowed the defendant to disconnect the computer and relocate it to the garage. Accordingly, in light of Segura and McArthur, the agents lawfully seized the defendant's residence, and no warrantless search was conducted. The defendant's motion to suppress must therefore be denied.

C. <u>Motion to Suppress - *Garrity* Violation</u>

The defendant argues that the statements he made to the agents and Captain McKenzie on November 5, 2008 should be suppressed because they were made in violation of <u>Garrity v. New Jersey</u>, 385 U.S. 493 (1967). Also, the defendant argues that because he was not advised of his right to counsel during interrogation and the interrogation was not recorded, such interrogation was in violation of West Virginia Code § 8-14A-2(5). The government responds that the statements were not made in violation of <u>Garrity</u> because they were not made in the context of a disciplinary investigation, and the statements were voluntary made during a "knock and talk." West Virginia Code § 8-14A-2(5) is also inapplicable, the government contends, because the defendant was not under investigation by his commanding officer, as required by statute.

After a <u>de novo</u> review, this Court agrees with the magistrate judge that the agents' interrogation of the defendant did not violate either <u>Garrity</u> or West Virginia Code § 8-14A-2(5). In <u>Garrity</u>, the United States Supreme Court recognized that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and it extends to all, whether they are policemen or other members of our body politic." 385 U.S. at 500. There, the Attorney General questioned New Jersey police officers in connection with an investigation. <u>Id.</u> at 494. Each police officer was warned that

12

"if he refused to answer he would be subject to removal from office." Id. The Court explained that "the choice given to petitioners was either to forfeit their jobs or to incriminate themselves." Id. at 497.

Here, the defendant's statements were not obtained under the threat of removal from his position at the fire department. Captain McKenzie did tell the defendant that the agents wanted to ask him some questions. He did not, however, order the defendant to answer the agents' questions. Furthermore, neither the agents nor Captain McKenzie ever mentioned to the defendant that his refusal to answer would result in his removal from his employment. Thus, the defendant's rights pursuant to Garrity were not violated.

Furthermore, the defendant's rights under West Virginia Code § 8-14A-2(5) were not violated. This statute sets out several conditions for the investigation and interrogation of a police officer or fireman. The conditions only exist "[w]hen any police officer of fireman is under investigation and subjected to interrogation by his commanding officer, or any other member of the employing police or fire department, which could lead to punitive action . . . ." In this case, the defendant was not interrogated by Captain McKenzie, any other commanding officer, or another member of the fire department. Therefore, West Virginia Code § 8-14A-2(5) is not applicable, and this motion to suppress must be denied.

D.  <u>Motion to Suppress - Search of Residence With a Warrant</u>

The defendant argues that the search warrant obtained by the agents is the fruit of the poisonous tree. As the magistrate judge recognized, this argument is contingent upon the dispositions of the previously-discussed motions to suppress, which have been denied.

The only remaining argument that the defendant asserts is that the information contained in the affidavit was given to the agents in a continued interview after the defendant asserted his Fifth and Sixth Amendment rights to counsel, in violation of <u>Montejo v. Louisiana</u>, 129 S. Ct. at 2079. The issue in <u>Montejo</u> concerned custodial interrogation, which did not occur in this case. Therefore, <u>Montejo</u> is inapplicable here. For the previously-discussed reasons, the defendant was not questioned after he invoked his right to counsel. Accordingly, this motion to suppress is denied.

E.  <u>Motion to Suppress Rule 404(b) Matters</u>

In this last motion to suppress, the defendant requests that this Court suppress, or the government be prohibited from introducing, any evidence of character, including evidence of other acts, crimes, or wrongs pursuant to Rule 404(b) of the Federal Rules of Evidence. The government did not file a response.

The magistrate judge declined to make a ruling on this motion, stating that is a question of evidence for the trial court to decide. This Court agrees and holds that this motion to suppress

cannot be ruled upon until evidence is presented at trial. Accordingly, this Court defers a ruling on the defendant's motion to suppress Rule 404(b) matters.

## V. Conclusion

After a de novo review, this Court concludes that the magistrate judge's recommendation is proper and the defendant's objections thereto lack merit. Accordingly, this Court hereby AFFIRMS and ADOPTS the magistrate judge's report and recommendation in its entirety and OVERRULES the defendant's objections thereto.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to the defendant and to counsel of record herein.

DATED: March 5, 2010

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE